UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-18-19

SHIRLEY BURRIS,

                    Plaintiff,                17-cv-9289 (JGK)

          - against -                         MEMORANDUM OPINION
                                              AND ORDER
HOUSING AND SERVICES INC. ET AL.,

                    Defendants.

JOHN G. KOELTL, District Judge:

     The plaintiff, Shirly Burris, brings this action pro se

against the defendants, Housing and Services Inc., Sara Stolfi,

James Dill, and Ethan Jamron, alleging various state and federal

causes of action arising out of the plaintiff's eviction and

subsequent related proceedings. The defendants have moved to

dismiss the plaintiff's amended complaint under Federal Rule of

Civil Procedure 12(b)(1) for lack of subject matter jurisdiction

and Rule 12(b)(6) for failure to state a claim upon which relief

can be granted. The defendants' motion is **granted in part and

denied in part.**

                              I.

     In defending against a motion to dismiss for lack of

subject matter jurisdiction pursuant to Rule 12(b)(1), the

plaintiff bears the burden of proving the Court's jurisdiction

by a preponderance of the evidence. Makarova v. United States,

201 F.3d 110, 113 (2d Cir. 2000). In considering such a motion,

the Court generally must accept the material factual allegations in the complaint as true. See J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). The Court does not, however, draw all reasonable inferences in the plaintiff's favor. Id.; see also Graubart v. Jazz Images, Inc., No. 02cv4645, 2006 WL 1140724, at *2 (S.D.N.Y. Apr. 27, 2006). Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists. See Anglo-Iberia Underwriting Mgmt. Co. v. P.T. Jamsostek, 600 F.3d 171, 175 (2d Cir. 2010); APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986). In so doing, the Court is guided by the body of decisional law that has developed under Rule 56 of the Federal Rules of Civil Procedure. Kamen, 791 F.2d at 1011.

When presented with a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and a motion to dismiss on other grounds, the first issue is whether the Court has the subject matter jurisdiction necessary to consider the merits of the action. See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all

reasonable inferences must be drawn in the plaintiff's favor.

McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.

2007). The Court's function on a motion to dismiss is "not to

weigh the evidence that might be presented at a trial but merely

to determine whether the complaint itself is legally

sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.

1985). The Court should not dismiss the complaint if the

plaintiff has stated "enough facts to state a claim to relief

that is plausible on its face." Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the

misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009). Moreover, pro se complaints are construed liberally.

Dolan v. Connolly, 794 F.3d 290, 293 (2d Cir. 2015).

While the Court should construe the factual allegations in

the light most favorable to the plaintiff, "the tenet that a

court must accept as true all of the allegations contained in

the complaint is inapplicable to legal conclusions." Id. When

presented with a motion to dismiss pursuant to Rule 12(b)(6),

the Court may consider documents that are referenced in the

complaint, documents that the plaintiff relied on in bringing

suit and that are either in the plaintiff's possession or that

the plaintiff knew of when bringing suit, or matters of which

3

judicial notice may be taken. See Chambers v. Time Warner, Inc.,
282 F.3d 147, 153 (2d Cir. 2002).

## II.

The following facts are undisputed for purposes of the
pending motion to dismiss.

The plaintiff's mother, AB, obtained her residence in June
2012 through defendant Housing and Services Inc. ("HSI"). Am.
Compl. at 6; Healy Decl. Ex. E ¶ 6. HSI is a private non-profit
corporation that provides housing in conjunction with the
HIV/AIDS Services Administration ("HASA") program of the New
York City Human Resources Administration to individuals who,
like AB, are diagnosed with HIV. Healy Decl. Exs. C at 9-10; E
¶¶ 3-4, p. 29. The plaintiff alleges that HSI is federally
funded through HASA. Am. Compl. at 15. The plaintiff and her son
were admitted into the program as family of AB, and they moved
in with AB in late June 2012. Id. at 6-7; Healy Decl. Ex. C. In
the summer of 2016, following an incident between the plaintiff
and AB, AB requested a transfer to another HSI-HASA unit. See
Opp'n at 15; Healy Decl. Exs. C; E ¶ 8. AB vacated her residence
in August 2018, and the plaintiff and her son remained. Opp'n at
15; Healy Decl. Ex. E ¶ 8.

4

Because the plaintiff and her son remained in an HSI—HASA unit no longer occupied by an individual with an HIV diagnosis,[1] HSI attempted to evict the plaintiff. See Am. Compl. at 19; Healy Decl. Ex. D. The plaintiff alleges that defendant Sara Stolfi, an HSI program manager, initiated the proceedings. Amended Compl. at 11. The plaintiff refused to leave and filed a complaint with the New York State Division of Human Rights ("NYSDHR") on June 27, 2016, alleging that HSI sought to evict her due to her and her son's disabilities – the plaintiff and her son have a "Serious Persistent Mental Illness." Id. at 8; see Healy Decl. Ex. D.

The NYSDHR investigated the plaintiff's case and dismissed the plaintiff's complaint after determining that the plaintiff was not an HSI client and was not evicted on a discriminatory basis. Healy Decl. Ex. D. The plaintiff refused to leave the unit and HSI commenced a licensee holdover proceeding in the Civil Court of The City of New York ("Civil Court"). Id. Ex. E at 26. The parties ultimately reached a settlement whereby the plaintiff agreed to vacate the unit by September 30, 2017. Id. Ex. F. This settlement was ordered by the Civil Court judge. Id. The plaintiff initiated further proceedings in state court which led to her eviction being stayed temporarily, but that stay was

---

[1] The plaintiff does not allege that she or her son has an HIV diagnosis, as required to reside in the HSI-HASA unit.

vacated in a December 15, 2017 order by the Civil Court. See id.
Ex. I. In that order, the court noted that the marshal advised
that Adult Protective Services was investigating the plaintiff's
case and thus the marshal would not go forward with the
plaintiff's eviction until the investigation was complete. Id.
The plaintiff appealed the Civil Court's December 15 order to
the Appellate Term of the Supreme Court, First Department. Id.
Ex. J.

Around the time she filed her appeal, the plaintiff also
instituted an Article 78 proceeding in the New York State
Supreme Court, New York County, seeking review of the NYSDHR
determination. See id. Ex. H. Following the failure to appear,
answer, or move in the case by HSI and the other respondents,
the state court ordered the NYSDHR to reopen the plaintiff's
case and stayed HSI's holdover prosecution of the plaintiff in
Civil Court pending further order of the state court. Id. Ex. N
at 1-2, 13-14. On March 13, 2019, the state court vacated its
prior order reopening the NYSDHR proceeding and staying HSI's
holdover proceeding. Dkt. No. 59-1. The court found that the
respondents had not in fact been served with notice of the prior
petition and that the plaintiff's challenge to the NYSDHR
determination was time-barred. Id.

The plaintiff filed an initial complaint in this Court on
November 22, 2017, and an amended complaint on June 29, 2018.

6

Construing the amended complaint in this case generously, the plaintiff appears to challenge the order of eviction following settlement in the holdover proceeding in the Civil Court. She also brings federal claims of unlawful discrimination due to her mental disability, retaliation, and failure to accommodate; a state-law claim for breach of the warranty of habitability; and she claims federal constitutional violations of procedural due process, the Fourteenth Amendment, and the Establishment Clause. She brings these causes of action under Title II of the Americans with Disabilities Act ("ADA"), § 504 of the Rehabilitation Act, the Fair Housing Act ("FHA"), 42 U.S.C. § 1983, and § 235-b of the New York Real Property Law.[2]

The defendants argue that this Court lacks subject matter jurisdiction over the plaintiff's case under the Rooker-Feldman doctrine and Younger abstention. See Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 90 (2d Cir. 2004) (noting that these two doctrines implicate subject matter jurisdiction). The defendants also argue that the plaintiff's federal suit is barred under New York Executive Law § 297(9) by her election of remedies. Next, they contend that the plaintiff cannot plausibly state claims of discrimination, retaliation, and failure to accommodate. Finally, the defendants argue that the plaintiff's

---

[2] The plaintiff also cites Title VII of the Civil Rights Act in her amended complaint but does not bring any claims related to employment discrimination.

42 U.S.C. § 1983 and constitutional claims fail because HSI and the other defendants are not state actors, and add that this Court should not exercise supplemental jurisdiction over the plaintiff's state-law claim.

### III.

First, the defendants argue that to the extent the plaintiff challenges the order of eviction in the Civil Court proceeding, the Rooker-Feldman doctrine bars this Court from hearing such an appeal. They add, summarily, that because the plaintiff's discrimination, retaliation, and failure to accommodate claims are "inextricably intertwined" with that proceeding, this Court has no jurisdiction over those claims.

The Rooker-Feldman doctrine provides that "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005). The doctrine has four requirements:

> (1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced.

Vossbrinck v. Accredited Home Lenders, Inc., 773 F.3d 423, 426 (2d Cir. 2014) (quotation marks and alterations omitted). To the extent the plaintiff challenges the Civil Court eviction order,

she (1) does so after losing in state court, (2) complains of injury caused by that order, (3) invites this Court to review the order, and (4) has filed this proceeding after the order was rendered. The plaintiff's agreement to leave the apartment, which was ordered by the Civil Court judge, was a state-court order. See Reyes v. Fairfield Props., 661 F. Supp. 2d 249, 273 (E.D.N.Y. 2009). Accordingly, under the Rooker-Feldman doctrine, this Court does not have subject matter jurisdiction over the plaintiff's challenge to the order of eviction.

However, the defendants' argument that the plaintiff's discrimination, retaliation, and failure to accommodate claims are "inextricably intertwined" with her Civil Court proceeding is not persuasive. In Hoblock, the Second Circuit Court of Appeals noted that the "inextricably intertwined" language in Rooker-Feldman jurisprudence led lower federal courts to apply the Rooker-Feldman doctrine too broadly. 422 F.3d at 86. The Hoblock court clarified that

> describing a federal claim as "inextricably intertwined" with a state-court judgment only states a conclusion. Rooker-Feldman bars a federal claim, whether or not raised in state court, that asserts injury based on a state judgment and seeks review and reversal of that judgment; such a claim is "inextricably intertwined" with the state judgment. But the phrase "inextricably intertwined" has no independent content.

Id. at 86-87. "Inextricably intertwined" is "simply a descriptive label attached to claims that meet the [four factors] outlined" above. Id. at 87.

The defendants do not argue that, under this framework, the plaintiff's discrimination, retaliation, and failure to accommodate claims are barred under the four relevant factors. Rather, they summarily raise the point that the claims are barred as inextricably intertwined with the plaintiff's Civil Court proceeding and cite Babalola v. B.Y. Equities, Inc., 63 F. App'x 534, 535 (2d Cir. 2003), and Springer v. Lincoln Shore Owners, Inc., No. 03cv4676, 2007 WL 2403165, at *4 (E.D.N.Y. Aug. 16, 2007). But Springer involved whether res judicata, not the Rooker-Feldman doctrine, barred a federal action following a Civil Court action. 2007 WL 2403165 at *4. And in Babalola, issued prior to Hoblock, the Second Circuit Court of Appeals affirmed the district court's holding that the Rooker-Feldman doctrine barred the plaintiff's claims because "a review of the complaint would necessitate an inquiry into the propriety of the eviction warrant issued by the housing court, and the affirmance of that decision by the Appellate Term and the denial of leave to appeal to the Appellate Division." 63 F. App'x at 536. In this case, it is not clear — and the defendants do not attempt to delineate — the extent to which this Court would have to

review the Civil Court eviction order when reviewing each of the plaintiff's claims in this case.

The defendants also argue that the Court should abstain from entertaining any claims involved in the plaintiff's NYSDHR proceeding under the Younger abstention doctrine. Younger abstention bars federal courts from enjoining certain pending state-court proceedings, namely: (1) "state criminal prosecutions," (2) certain "civil enforcement proceedings," and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 73 (2013) (quotation marks omitted); see Wilmington Tr., Nat'l Ass'n v. Estate of McClendon, 287 F. Supp. 3d 353, 361-62 (S.D.N.Y. 2018); see generally Younger v. Harris, 401 U.S. 37 (1971). While Younger began as a form of abstention from interference in ongoing criminal proceedings, under Younger federal courts can also "refrain from hearing cases that would interfere . . . with certain types of state civil proceedings." Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996) (citation omitted). "Younger abstention is appropriate when: 1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has an avenue open for review of constitutional claims in the state court." Hansel

v. Town Court for Town of Springfield, N.Y., 56 F.3d 391, 393 (2d Cir. 1995).

Younger abstention applies to civil proceedings only when they are enforcement proceedings akin to a criminal case or "involv[e] certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 368 (1989); Huffman v. Pursue, Ltd., 420 U.S. 592, 604 (1975). The plaintiff's civil NYSDHR proceeding does not meet either of these requirements and is therefore not the type of proceeding covered by Younger. In any event, the plaintiff does not seek to interfere with the NYSDHR proceeding which the state court has now declined to reopen.

Finally, the defendants argue that New York Executive Law § 297(9) bars the plaintiff's federal suit because she pursued her claim before the NYSDHR; thus, the plaintiff has effectively elected to litigate her claims in that forum. Section 297(9) provides, in short, that once New York State Human Rights Law claims are brought before the NYSDHR, they cannot be brought again as a plenary action in another court. York v. Ass'n of Bar of N.Y.C., 286 F.3d 122, 127 (2d Cir. 2002). The plaintiff has elected her remedies for a violation of the New York State Human Rights Law by pursuing it before the NYSDHR. However, the plaintiff has not brought any claims under the New York State

12

Human Rights Law in this case, and New York Executive Law § 297(9) does not preclude the plaintiff from bringing other claims – such as violations of federal law – in this Court.

**IV.**

The defendants contend that the plaintiff cannot plausibly allege discrimination, retaliation, or failure to accommodate under Title II of the ADA, § 504 of the Rehabilitation Act, or the FHA. They also contend that the plaintiff cannot state a 42 U.S.C. § 1983 claim or any other federal constitutional claim because the defendants are not state actors.

As an initial matter, individuals cannot be held liable under the ADA or the Rehabilitation Act. J.L. on behalf of J.P. v. N.Y.C. Dep't of Educ., 324 F. Supp. 3d 455, 467 n.4 (S.D.N.Y. 2018). The plaintiff's discrimination and retaliation claims made under the ADA and Rehabilitation Act against the three individual defendants are therefore **dismissed with prejudice.** And although the FHA allows for individual liability, Andujar v. Hewitt, No. 02cv2223, 2002 WL 1792065, at *10 (S.D.N.Y. Aug. 2, 2002), the plaintiff has not alleged facts connecting defendants James Dill and Ethan Jamron to the discriminatory and retaliatory conduct discussed below. The plaintiff's FHA discrimination and retaliation claims against those two defendants are **dismissed with prejudice.**

**A.**

**1.**

To state a discrimination claim under Title II of the ADA, a plaintiff must allege that (1) she is a qualified individual with a disability, (2) the defendants are subject to the ADA, and (3) she was denied the opportunity to participate in or benefit from the defendants' services or was otherwise discriminated against by the defendants because of her disability. Shomo v. City of N.Y., 579 F.3d 176, 185 (2d Cir. 2009). The analysis under the Rehabilitation Act is generally the same, except that the plaintiff must also allege, as she does in this case, that the defendants received federal funding. Id.

The plaintiff first argues that she is being evicted because of her mental illness. However, she fails to allege that she is qualified for the HSI-HASA unit she occupies. That is, she does not claim to be HIV positive, and the program supplying her residence is reserved for people with an HIV diagnosis. Moreover, it follows that the defendants had a nondiscriminatory basis for attempting to evict the plaintiff – namely, she does not qualify to reside in the unit she occupies. The plaintiff's first basis for relief under the ADA and the Rehabilitation Act fails.

The plaintiff also argues that the defendants discriminated against her based on her mental illness by not following an HASA policy – codified in the HASA March 2014 Desk Guide – that applies to "[a]ny individual who is not an HASA client and continues to reside in the apartment/unit after the HASA client is no longer in residence." Healy Decl. Ex. E at 55. The policy states:

> Failure of the Provider to aggressively work toward rehousing non-HASA eligible individuals will result in a disallowance of any further payments on the apartment as of the sixth month following the death/departure of the HASA client. All efforts to re-house individuals in this category must be clearly documented.

> Provider must assist individual(s) to move, within six months of client's death/departure, either by having the lease assigned from the Provider's Program to the individual him/herself and find other means to pay the rent (e.g., PA shelter allowance); or seeking alternate housing at a rent the individual can afford.

Id. The plaintiff claims that, because of her disability and her disability-related NYSDHR complaint against the defendants, the defendants did not follow this policy and instead initiated eviction proceedings without working with her to find suitable housing. Indeed, the plaintiff filed her NYSDHR complaint on June 27, 2016, and received a letter dated August 3, 2016, from defendant Sara Stolfi, an HSI program manager, stating that the plaintiff was no longer qualified to stay in the HSI-HASA unit and "must seek housing independently from [HSI]." Id. Ex. C. This letter included portions of the HASA March 2014 Desk Guide

that indicated that the plaintiff was no longer qualified for her unit but did not include the portion quoted above about relocation assistance. See id. Moreover, the defendants do not claim that they helped the plaintiff find a new residence. To the contrary, the plaintiff alleges that Stolfi initiated eviction proceedings against the plaintiff allegedly due to the plaintiff's disability and in retaliation for her filing the NYSDHR complaint.

The plaintiff has alleged adequately that she is qualified to receive the benefit of the HASA policy relating to relocation assistance but did not receive it because of her disability and in retaliation for filing her NYSDHR complaint. Moreover, HSI does not contest that it is subject to the ADA or the Rehabilitation Act. Therefore, the plaintiff has stated a discrimination claim against HSI under the ADA and the Rehabilitation Act.[3]

---

[3] The plaintiff also summarily claims that she was discriminated against because of her race. She states that she and her son are the only black family in her building and alleges that she would not have been evicted if she were white. Am. Compl. at 13, 20. However, as it relates to her eviction, this claim fails because the plaintiff has not pleaded that she was qualified to be in the HSI-HASA unit. See Pandozy v. Segan, 518 F. Supp. 2d 550, 556 (S.D.N.Y. 2007) (noting that to state a claim for housing-related discrimination, the plaintiff must allege, among other things, that the plaintiff is "qualified for the dwelling at issue"), aff'd, 340 F. App'x 723 (2d Cir. 2009). It also fails as it relates to her not receiving assistance in finding new housing under the HASA policy because the plaintiff pleads no facts suggesting any link between her race and the defendants' failure to follow the policy. To the extent the plaintiff brings a racial discrimination claim, it is **dismissed without prejudice**.

The defendants' argument to the contrary is unpersuasive.
The defendants cite a string of cases that stand for the
proposition that a discrimination claim under the ADA or the
Rehabilitation Act is not always the proper vehicle to challenge
the particular level of care a defendant provides to the
disabled, or to challenge a reduction in disability-related
services previously provided. See, e.g., Doe v. Pfrommer, 148
F.3d 73, 82-84 (2d Cir. 1998) ("While such particularized
treatment among the many services provided by [the defendant] to
the disabled may be required under Title I, it is not
necessarily required under the anti-discrimination provisions of
the Rehabilitation Act, or by implication, the ADA."); Cercpac
v. Health & Hosps. Corp., 147 F.3d 165, 168 (2d Cir. 1998)
("[T]he disabilities statutes do not guarantee any particular
level of medical care for disabled persons, nor assure
maintenance of service previously provided."); Flight v.
Gloeckler, 68 F.3d 61, 63-64 (2d Cir. 1995) (stating that the
Rehabilitation Act "does not clearly establish an obligation to
meet a disabled person's particular needs vis-a-vis the needs of
other handicapped individuals, but mandates only that services
provided [to] nonhandicapped individuals not be denied to a
disabled person because [s]he is handicapped" (quotation marks
omitted, alterations in original accepted)). The defendants'
citation to these cases illustrates their misunderstanding of

the plaintiff's allegation. The plaintiff is not alleging, at least in this instance, that she was not provided services that she should be provided as a disabled individual; rather, she is alleging that she was not provided a service to which she was entitled – a service that is provided to all individuals, disabled or not – because of her disability.

Accordingly, the defendants' motion to dismiss the plaintiff's ADA and Rehabilitation Act discrimination claims is **denied** with respect to HSI.

**2.**

The plaintiff also brings a discrimination claim against the defendants under the FHA but does not specify which provision. It appears that she brings her claim pursuant to 42 U.S.C. § 3604(f)(2), which makes it illegal "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . that person." The defendants do not dispute that the plaintiff is handicapped. And, as discussed above, the plaintiff has pleaded sufficiently that the defendants failed to follow the HASA policy and provide her with assistance in finding new housing due to her disability. Thus, the remaining question is whether the defendants' failure to follow the HASA policy can constitute discrimination under the FHA in the terms,

conditions, or privileges of rental of the plaintiff's dwelling or the provision of services in connection with such dwelling.

The Second Circuit Court of Appeals recently held that 42 U.S.C. § 3604 prohibits postacquisition discrimination – that is, discrimination occurring after a plaintiff rents a dwelling. Francis v. Kings Park Manor, Inc., No. 15-1823-CV, 2019 WL 1006554, at *5 (2d Cir. Mar. 4, 2019). Accordingly, conduct that "constitute[s] discrimination . . . in the provision of services associated with [one's] dwelling" after acquisition of that dwelling is prohibited. Id. (quotation marks omitted). In this case, the plaintiff was properly a tenant in the HSI-HASA residence as AB's family member until AB moved residences. As such, she was entitled under HASA policy to assistance in finding a new residence when AB moved out. This policy is a "service associated with" the plaintiff's dwelling and thus covered by the FHA. Id. Holding otherwise, and thus ignoring the plaintiff's allegation that the defendants did not follow their housing-related policy because of her disability, "would contravene Congress's intent to root out discrimination in housing" and to foster "truly integrated and balanced living patterns." Id. (quotation marks omitted). The plaintiff has therefore stated a discrimination claim under the FHA.

Moreover, the FHA allows for claims to be brought against individuals. Andujar, 2002 WL 1792065 at *10 ("Aggrieved persons

have long been permitted to assert Fair Housing Act claims against individual defendants who engaged in affirmative acts of discrimination . . . ."). The plaintiff has stated a sufficient discrimination claim against defendant Sara Stolfi. The plaintiff has alleged that she filed a disability-related NYSDHR complaint against Stolfi; that shortly after the complaint was filed Stolfi sent her a letter stating that HSI would not help the plaintiff find new housing; that the letter included only selective portions of HASA policy thus hiding the relocation services owed to the plaintiff; and that Stolfi initiated eviction proceedings against her because of her mental disability.

Accordingly, the defendants' motion to dismiss the plaintiff's FHA discrimination claim is **denied** as it relates to HSI and defendant Sara Stolfi.

B.

To state a retaliation claim under the ADA, the Rehabilitation Act, or the FHA, a plaintiff must allege that (1) she was engaged in a protected activity, (2) the defendants were aware of this activity, (3) the defendants took adverse action against the plaintiff, and (4) a causal connection exists between the protected activity and the adverse action. Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 148 (2d Cir. 2002)

(ADA and Rehabilitation Act); Elmowitz v. Exec. Towers at Lido, LLC, 571 F. Supp. 2d 370, 376 (E.D.N.Y. 2008) (FHA).

The plaintiff was engaged in a protected activity – namely, filing a NYSDHR complaint. See Cortes v. MTA N.Y.C. Transit, 802 F.3d 226, 233 (2d Cir. 2015). The defendants were undoubtedly aware of the complaint. See Healy Decl. Ex. A (notifying the defendants of the NYSDHR complaint against them). And for the same reasons discussed in the preceding section, the plaintiff has sufficiently pleaded an adverse action and causal connection. She has therefore stated a retaliation claim under the ADA, the Rehabilitation Act, and the FHA.

Accordingly, the defendants' motion to dismiss is **denied** as it relates to the retaliation claims against HSI under the ADA, the Rehabilitation Act, and the FHA. The motion is also **denied** as it relates to the FHA retaliation claim against defendant Sarah Stolfi.

### C.

To state a prima facie case under the FHA for discrimination based on a failure to reasonably accommodate, the plaintiff must allege that she (1) suffers from a qualifying handicap, (2) the defendants knew or reasonably should have known of her handicap, (3) accommodation of the handicap may be necessary to afford her an equal opportunity to use and enjoy the residence, and (4) the defendants refused to make such an

accommodation. Bentley v. Peace & Quiet Realty 2 LLC, 367 F.
Supp. 2d 341, 345 (E.D.N.Y. 2005). Analysis of a failure to
accommodate claim is treated the same under the FHA, the ADA,
and the Rehabilitation Act. Super v. J. D'Amelia & Assocs., LLC,
No. 09cv831, 2010 WL 3926887, at *3 (D. Conn. Sept. 30, 2010).
"[A] defendant need not make an accommodation at all if the
requested accommodation 'would fundamentally alter the nature of
the service, program, or activity.'" Powell v. Nat'l Bd. of Med.
Examiners, 364 F.3d 79, 88 (2d Cir.) (quoting 28 C.F.R.
§ 35.130(b)(7)), opinion corrected, 511 F.3d 238 (2d Cir. 2004).

    In this case, although the plaintiff has a right under HASA
policy to assistance in finding a new residence, she does not
have a right to be in the HSI-HASA unit she currently occupies
because she does not have an HIV diagnosis. Moreover, to allow
the plaintiff to continue to stay in the apartment she is
occupying, the defendants would have to change fundamentally the
nature of the HSI-HASA program. That is, they would have to
change their program from one providing housing and services to
HIV-positive persons and their families into one providing
housing and services to those diagnosed with a mental illness.
The plaintiff has failed to state a failure to accommodate
claim.

**D.**

"To state a claim under [42 U.S.C.] § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that [the litigant's] constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" United States v. Int'l Bhd. of Teamsters, 941 F.2d 1292, 1295 (2d Cir. 1991).

The plaintiff does not allege that defendant HSI, a private non-profit corporation, or any of the individual defendants, are state actors or were acting under color of state law. Although she alleges that HSI is federally funded, "government funding of a private entity . . . is insufficient to transform otherwise private conduct into state action." Young v. Halle Hous. Assocs., L.P., 152 F. Supp. 2d 355, 362 (S.D.N.Y. 2001). Accordingly, the plaintiff's 42 U.S.C. § 1983 and federal constitutional claims fail.

Finally, the plaintiff brings a state-law claim for breach of the warranty of habitability under § 235-b of the New York Real Property Law. The defendants urge this Court to refuse to exercise supplemental jurisdiction over this claim. But because some of the plaintiff's federal claims remain, this Court will exercise supplemental jurisdiction over the plaintiff's state-law claim.

All the facts the plaintiff alleges in support of her § 235-b claim are based on events and conditions occurring during and after April 2017, about eight months after AB left the HSI-HASA unit and after the plaintiff, in turn, lost any right to reside in the unit. See Am. Compl. at 13 & Ex. G. Moreover, the plaintiff does not allege that, as a holdover tenant, she paid rent. "It is settled that the duty of the tenant to pay rent is coextensive with the landlord's duty to maintain the premises in a habitable condition." Goethals Mobile Park, Inc. v. Staten Island Meadowbrook Park Civic Ass'n, Inc., 618 N.Y.S.2d 409, 411 (App. Div. 1994); see King Enterprises Ltd. v. Mastro, No. 51583/2001, 2001 WL 1328712, at *3 (N.Y. Civ. Ct. June 1, 2001) (noting that a tenant must be in privity with a landlord to establish a claim for breach of the warranty of habitability); N.Y. Real Prop. Law § 235-b (McKinney), Practice Commentaries 2018 ("There must be an obligation to pay

rent for a tenancy to come under [§ 235-b's] purview. . . .
[N]on-tenant occupants have no claim hereunder . . . ."
(citations omitted)). The plaintiff's § 235-b claim therefore
fails.

**CONCLUSION**

The Court has considered all the arguments raised by the
parties. To the extent not specifically addressed, the arguments
are either moot or without merit. For the reasons explained
above, the defendants' motion to dismiss is **granted in part and
denied in part.** Their motion is **denied** with respect to the
plaintiff's discrimination and retaliation claims against HSI
under the ADA, the Rehabilitation Act, and the FHA. Their motion
is also **denied** with respect to the plaintiff's discrimination
and retaliation claims against defendant Sara Stolfi under the
FHA. The defendants' motion to dismiss is **granted** with respect
to all other claims. Those claims are **dismissed with prejudice,**
except the plaintiff's claims challenging her eviction, her New
York Real Property Law § 235-b claim, and any racial
discrimination claim, which are **dismissed without prejudice.**
Defendants James Dill and Ethan Jamron are dismissed from this
case **with prejudice.**

The Clerk of Court is directed to close docket number 39.

**SO ORDERED.**

**Dated:**     **New York, New York**
          **March 18, 2019**

                                        John G. Koeltl
                                United States District Judge